UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FREEMAN DECORATING CO. | CIVIL ACTION |
| VERSUS | NO. 02-2103 |
| ENCUENTRO LAS AMERICAS TRADE CORP., THE CITY OF NEW ORLEANS THROUGH THE OFFICE OF THE MAYOR, METROVISION PARTNERSHIP FOUNDATION, THE INTER-AMERICAN DEVELOPMENT BANK, THE INTER-AMERICAN INVESTMENT CORP., AND JULIO H. GUICHARD, JR. | SECTION "C" |

OPINION

This matter was tried before the Court without a jury on May 11, 2006, and taken under advisement. The issue of liability had previously been determined in favor of Freeman Decorating Co. ("Freeman") when the Court granted Freeman's Motion for Partial Summary Judgment against the City of New Orleans on August 24, 2005 (Rec. Doc. 129). Thus, all that remains to be decided is the quantum of damages. Freeman contends it is entitled to $203,070.27 plus reasonable attorney's fees for failure to pay an open account pursuant to La.R.S. 9:2781. Having considered the testimony and evidence adduced at trial, the record, and the law, the Court finds Freeman is entitled to the full amount sought plus reasonable attorneys fees.

I. Evidentiary Issue

Before turning to the merits of the case, the Court first considers the City of New Orleans's ("the City") objection made at trial to the admission of Freeman's various business records contained in the "Joint Bench Book."[1] The City objected on hearsay grounds. Freeman argued at trial that the records were admissible under Rule 803(6) of the Federal Rules of Evidence, the hearsay exception for "Records of Regularly Conducted Activity." FED. R. EVID. 803(6). In response, the City contended that Ms. Bonnie Helmker ("Helmker") – Freeman's General Manager and supervisor of the records at issue – was not qualified under Rule 803(6) to offer the records into evidence because she was not employed by Freeman at the time the records were generated. The Court finds that the law does not support the City's assertion that the witness through which the records are introduced need be employed at the company at the time of the original production of the records. Because the records satisfy each of the criteria set forth in Rule 803(6), they are admitted.[2]

Rule 803(6) provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

FED. R. EVID. 803(6).

---

[1] The objection was taken under submission pending further briefing which the Court has considered in rendering its opinion.

[2] The City has not articulated an objection to any requirements listed in Rule 803(6) other than the one discussed so the Court does not specifically address those elements. In any event, for the reasons stated in Freeman's post-trial memorandum on this issue (Rec. Doc. 141), the Court finds those requirements have been met in this case.

Contrary to the City's assertions, the law does not require that Helmker have been employed by Freeman when the records were created in order for Freeman to offer the records through her testimony.  See, e.g., United States v. Evans, 572 F.2d 455, 490 (5th Cir. 1978) ("Of course, it is not necessary that a sponsoring witness be employed by the business at the time of the making of each record."); White Industries, Inc. v. Cessna Aircraft Co., 611 F.Supp. 1049, 1059-60 (W.D.Mo. 1985)("[T]he information recorded must have originated with someone who had first-hand knowledge thereof. *This does not mean, of course, that the proponent must produce the original informant as a witness; in fact the identity of the original informant need not even necessarily be known.*")(citing 4 Weinstein and Berger, *Weinstein's Evidence* 803-190 (1984) (emphasis added)); 4 Weinstein's Evidence ¶803(6)[02] ("[T]he witness need not even have been in the employ of the business to which it relates at the time of its making, so long as he understands the system.")  Rather, all that is required is that the witness be familiar with the practices of the business in question and the manner in which the record was prepared.  See United States v. Martin, 434 F.2d 275, 279 (5th Cir. 1970) ("[T]he person who offers the report must be in a position to attest to its authenticity.") Helmker, whom the Court finds to be eminently credible, testified that part of her responsibility as General Manager of the New Orleans operations was to supervise and maintain the records generated in the course of business dealings.  She demonstrated familiarity with Freeman's record keeping procedures in general, as well as in this case, and the Court is persuaded as to the authenticity and reliability of the records.  The City's objection is **OVERRULED**.

II. Merits

The facts leading to the dispute between Freeman and the City are set out in the Court's ruling on the various summary judgment motions (Rec. Doc. 129) and are not repeated here. As noted, the City was found liable and this trial concerned solely the issue of determining the amount of damages owed to Freeman by the City.

The trial consisted of one witness – Helmker. The City did not call any witnesses. Helmker testified, and the City did not contest, that $203,070.27 of unpaid invoices remained outstanding from Freeman's contract with the City. See, Trial Exs. 9, 10, 11. Through Helmker, Freeman introduced proposals, work orders, labor sheets invoices, and detailed lists demonstrating the services and equipment the City was provided pursuant to its contract with Freeman pertaining to the annual meeting of the Inter-American Development Bank ("IDB"). Helmker discussed the business endeavor with the City from beginning to end. In particular, she testified about numerous "audits" and consultations with Julio Guichard – the Director of the Office of International Relations and Trade Development for the City – that took place during the course of the project whereby the City was informed of the progress of Freeman's work as well as its costs. Helmker testified, and the City did not contest, that to her knowledge nobody from the City ever disputed the cost of the project at any point.

The City barely challenged the factual basis of Freeman's accounting. On cross-examination, counsel for the City demonstrated that some of the items purchased by Freeman for use in the IDB meeting were used by Freeman in subsequent shows. The City never articulated, however, the extent to which that fact would affect the legitimate value of the goods to City or a legal basis for finding that the City should owe Freeman less. Additionally, the City pointed out that the cost of certain individual items were remarkably high. Helmker explained the seemingly

4

high prices were justified by the built-in labor costs of acquiring, setting up, and removing the item.  The City offered no reason for the Court to discredit in any way the legitimacy of that explanation.  Additionally, as noted, none of these costs were ever formally challenged by the City who negotiated and contracted with Freeman to provide the goods and services.

The City therefore has not presented this Court with any legal or factual basis to conclude that it should not live up to the full terms of its agreement.  The terms of La.R.S. 9:2781 are clear: "When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant."  La.R.S. 9:2781.

Accordingly,

**IT IS ORDERED** that judgment be entered in favor of Freeman in the amount of $203,070.27 plus reasonable attorneys fees.  Freeman shall file a motion before the Magistrate Judge to determine the amount of attorneys fees.

New Orleans, Louisiana, this 30th day of May, 2006.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE