UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREEMAN DECORATING COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO:  02-2103-HGB-SS** |
| **ENCUENTRO LAS AMERICAS TRADE CORPORATION, et al** | |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned by the District Court for a report and recommendation on the issue of attorneys' fees. Rec. doc. 145. For the reasons described below it is recommended that the motion of the plaintiff, Freeman Decorating Co. ("Freeman"), for attorneys' fees and costs be granted in part and denied in part and that Freeman be awarded fees and costs of $87,101.76.

### PROCEDURAL BACKGROUND

On July 9, 2002, Freeman filed a complaint on an open account against six defendants:  (1) Encuentro Las Americas Trade Corporation ("Encuentro"); (2) The City of New Orleans ("New Orleans"); (3) Metrovision Partnership Foundation ("Metrovision"); (4) Inter-American Development Bank; (5) Inter-American Investment Corporation; and (6) Julio H. Guichard, Jr.  A

judgment was sought against the defendants, jointly and <u>in solido</u>, for $203,070.27 plus interest, costs and reasonable attorneys' fees. Rec. doc. 1. On October 9, 2006, the motions of Inter-American Development Bank, Inter-American Investment Corporation and Julio Guichard to dismiss were granted. Rec. doc. 23. On January 8, 2003, the motions of Metrovision and New Orleans to dismiss were denied. Rec. doc. 40. On November 25, 2003, the action was stayed because of a pending criminal investigation. Rec. doc. 49. In June, 2004, the case was reopened. Rec. doc. 57. Freeman filed a supplemental and amended complaint alleging additional grounds for relief against Encuentro, New Orleans and Metrovision. Rec. doc. 64. On March 15, 2005, counsel for Encuentro was permitted to withdraw because he was unable to contact his client. Rec. doc. 77.

On August 24, 2005, the litigation was terminated as to Metrovision, when its motion for summary judgment was granted and Freeman's cross-motion for summary judgment was denied. Freeman's motion for summary judgment as to liability against New Orleans was granted as to liability and the only remaining issue was quantum. Rec. doc. 129. New Orleans and Encuentro were represented by the same counsel. Rec. doc. 138. On May 11, 2006, there was a trial on quantum with only one witness. Rec. doc. 140. On May 31, 2006, judgment was entered in favor of Freeman for $203,070.27, the amount sought in its original complaint. Rec. doc. 142.

Freeman filed its motion seeking attorneys' fees of $127,377.50 and costs of $7,708.09 for a total of $135,085.59. Rec. docs. 145 and 149. The request is opposed by New Orleans. Rec. doc. 148.

**LAW APPLICABLE**

Freeman obtained relief pursuant to Louisiana's law for a suit on an open account. La. Rev. Stat. Ann. § 9:2781.[1] When a creditor prevails under this statute, the trial court is required to award reasonable attorney's fees for the prosecution and collection of the debt. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La. 1983). In State of Louisiana, Department of Transportation and Development v. Williamson, 597 So.2d 439 (1992), the DOTD appealed an award of attorney's fees. The Louisiana Supreme Court described the factors to be taken into consideration in determining the reasonableness of attorney's fees as including:

1. The ultimate result obtained;
2. The responsibility incurred;
3. The importance of the litigation;
4. Amount of money involved;
5. Extent and character of the work performed;
6. Legal knowledge, attainment and skill of the attorneys;
7. Number of appearances made;
8. Intricacies of the facts involved;
9. Diligence and skill of counsel; and
10. The court's own knowledge.

597 So.2d at 442.[2] In Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp., 236 F.3d 214, 219 (5th Cir. 2000), the Fifth Circuit described Louisiana law as mandating consideration of

---

[1] Because the amount of attorney's fees is determined under Louisiana law, the lodestar approach is not followed. Liljeberg Enterprises, Inc. v. Emmett, Cobb, Waits, and Kessenich, 1996 WL 169128 (E.D.La.)(Sear, J.).

[2] Some of these factors are the same as the twelve factors found in Johnson v. Georgia Highway Express, 488 F.2d 714, 717-19 (5th Cir. 1974). The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) The undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19.

these ten factors when considering a request for attorney's fees.

## APPLICATION OF TEN LOUISIANA FACTORS

1.   <u>The ultimate result obtained</u>.

Freeman sought to obtain a judgment against six defendants, jointly and <u>in solido</u>, for $203,070.27 plus interest, costs and reasonable attorneys' fees. It failed in this endeavor and was only able to obtain a judgment against New Orleans for $203,070.27. Metrovision, Inter-American Development Bank, Inter-American Investment Corporation and Julio H. Guichard, Jr. were all successful in defeating Freeman's attempt to hold them liable <u>in solido</u> with New Orleans. Because of Freeman's failure to prevail on its claims against the other defendants, the time spent pursuing those claims must be eliminated.

In support of its fee application Freeman submitted a 37 page print-out from its counsel, dated November 2, 2006. It includes time spent by Freeman's counsel in the unsuccessful efforts against the defendants dismissed from the litigation. If Freeman had chosen to pursue only New Orleans, the following activities would have been reduced or eliminated: (a) preparation of complaint and amended complaint; (b) responding to motions to dismiss by the parties that were dismissed; (c) discovery from dismissed parties; (d) motions for summary judgment; and (e) other matters related exclusively to the claim against Metrovision.

   a.   <u>Complaint and amended complaint</u>.

The time spent preparing the complaint and amended complaint will be reduced by one-half in order to account for time spent by Freeman on pursuit of the claims against the defendants that were dismissed. Those entries are:

| Date | Timekeeper | Hours | Reduction |
|---|---|---|---|
| 06/16/02 | WMB | 6.75 | 3.375 |
| 06/18/02 | WMB | .75 | .375 |
| 07/09/02 | WMB | 14.50[3] | 7.25 |
| 07/16/02 | WMB | 1.50 | .75 |
| 07/28/04 | WMB | .75 | .375 |
| 07/28/04 | WMB | 4.25 | 2.125 |
| 07/29/04 | WMB | .50 | .25 |
| 07/29/04 | WMB | .50 | .25 |
| 07/30/04 | WMB | 5.75 | 2.875 |
| | Total reduction for WMB | | 17.625 |
| 07/28/04 | CED | 2.00 | 1.00 |
| 07/28/04 | CED | 1.00 | .50 |
| 07/29/04 | CED | .50 | .25 |
| | Total reduction for CED | | 1.75 |

b.  <u>Motions to dismiss</u>.

All of the time spent responding to the motion to dismiss filed by Inter-American Development Bank, Inter-American Investment Corporation and Julio H. Guichard, Jr. will be eliminated because their motions were granted. The time spent responding to Metrovision's motion to dismiss will also be eliminated. Although Metrovision's motion to dismiss was denied, its later motion for summary judgment was granted. In order for Freeman to obtain the judgment against New Orleans it was not necessary for it to pursue Metrovision.

---

[3] Freeman's counsel used what is described as a "block billing methodology," which results in a significant amount of time recorded in a single entry. Rec. doc. 149 at pp. 2-4. As an example, Freeman's counsel recorded more than 90 hours in four entries all on July 15, 2005. This represented the cumulative time for each project described in the entry. Rec. doc. 145-5 at p 34 (p. 28 of billing printout).

| Date | Timekeeper | Hours | Reduction |
|---|---|---|---|
| 09/09/02 | WMB | 3.75 | 3.75 |
| 10/01/02 | WMB | 3.25 | 3.25 |
| 10/01/02 | WMB | 11.75 | 11.75 |
| 10/01/02 | WMB | 5.75 | 5.75 |
| 10/07/02 | WMB | .75 | .75 |
| 10/09/02 | WMB | 8.50 | 8.50 |
| 10/09/02 | WMB | 3.50 | 3.50 |
| 10/11/02 | WMB | 1.75 | 1.75 |
| 10/15/02 | WMB | 6.50 | 6.50 |
| 10/18/02 | WMB | .75 | .75 |
| 10/21/02 | WMB | .50 | .50 |
| 11/20/02 | WMB | 3.50 | 3.50 |
| Total reduction for WMB | | | 50.25 |
| 10/14/02 | JP | .80 | .80 |
| 10/15/02 | JP | 1.00 | 1.00 |
| Total reduction for JP | | | 1.80 |

c.   <u>Discovery</u>.

Where the discovery activity was exclusively directed to Metrovision, the entries will be eliminated. Where the activity was for discovery from both Metrovision and New Orleans, the entries will be reduced by one-half.

Freeman used some testimony from the depositions in support of its motion for summary judgment against New Orleans. A review of the motions for summary judgment indicates that the depositions of two Metrovision executives, Robert Gayle and Linda Prudhome, were not used by Freeman in pursuit of the claims against New Orleans. The time for their depositions will be

eliminated. The court was not provided with any guidance as to what other depositions or portions of deposition were necessary or unnecessary for the claim against New Orleans, so no other adjustments will be made for depositions.

| Date | Timekeeper | Hours | Reduction |
|---|---|---|---|
| 08/07/03 | WMB | 1.50 | 1.50 |
| 10/20/03 | WMB | .50 | .50 |
| 10/20/03 | WMB | .50 | .50 |
| 11/18/04 | WMB | .75 | .75 |
| 11/22/04 | WMB | 11.25 | 11.25 |
| 02/28/05 | WMB | .50 | .50 |
| 03/04/05 | WMB | 1.75 | 1.75 |
| 03/04/05 | WMB | .50 | .50 |
| 03/07/05 | WMB | .50 | .50 |
| 03/16/05 | WMB | .75 | .75 |
| 03/16/05 | WMB | .50 | .50 |
| 03/16/05 | WMB | .50 | .50 |
| 03/21/05 | WMB | .50 | .50 |
| 03/22/05 | WMB | .75 | .75 |
| 03/29/05 | WMB | .50 | .50 |
| 03/29/05 | WMB | 13.50 | 13.50 |
| 03/30/05 | WMB | 1.75 | 1.75 |
| 04/11/05 | WMB | .50 | .50 |
| 04/11/05 | WMB | .50 | .50 |
| 04/11/05 | WMB | 5.50 | 5.50 |
| 05/17/05 | WMB | 3.25 | 3.25 |
| 05/17/05 | WMB | 2.75 | 2.75 |
| 06/27/05 | WMB | .50 | .50 |
| 06/30/05 | WMB | .50 | .50 |
| Total reduction for WMB | | | 50.00 |
| 11/23/04 | GSP | 5.20 | 2.60 |

| Date | Timekeeper | Hours | Reduction |
|---|---|---|---|
| 12/20/04 | GSP | 2.25 | 2.25 |
| 12/07/04 | GSP | 2.50 | 2.50 |
| 01/14/05 | GSP | .25 | .25 |
| 02/28/05 | GSP | 1.75 | 1.75 |
| | Total reduction for GSP | | 9.35 |
| 04/08/05 | CED | .25 | .25 |
| | Total reduction for CED | | .25 |
| 05/19/03 | AA | 2.00 | 1.00 |
| 06/06/03 | AA | 1.30 | .65 |
| 06/06/03 | GB | 1.30 | .65 |
| 06/09/03 | AA | 1.20 | .60 |
| 06/09/03 | GB | 2.30 | 1.15 |
| 07/08/03 | GB | 2.10 | 1.05 |
| 07/10/03 | GB | 1.90 | .95 |
| 07/10/03 | GB | 1.30 | .65 |
| | Total reduction for AA and GB | | 6.70 |

d.  <u>Motions for summary judgment</u>.

Metrovision filed a motion for summary judgment which was granted. Freeman filed a cross-motion for summary judgment, which was denied. Freeman's time spent in the preparation of its cross-motion and responding to Metrovision's motion will be eliminated.

| Date | Timekeeper | Hours | Reduction |
|---|---|---|---|
| 07/15/05 | WMB | 34.75 | 34.75 |
| 07/15/05 | WMB | 21.75 | 21.75 |
| | Total for WMB | | 56.50 |
| 07/12/05 | ECP | 2.25 | 2.25 |

| | | | |
|---|---|---|---|
| 07/19/05 | ECP | .20 | .20 |
| 07/19/05 | ECP | 1.50 | 1.50 |
| 07/20/05 | ECP | .90 | .90 |
| 07/21/05 | ECP | .25 | .25 |
| 07/21/05 | ECP | 1.10 | 1.10 |
| 07/22/05 | ECP | 2.00 | 2.00 |
| 07/22/05 | ECP | 3.95 | 3.95 |
| 07/25/05 | ECP | .50 | .50 |
| 07/27/05 | ECP | .15 | .15 |
| | Total for ECB | | 12.80 |

e. <u>Other matters related to Metrovision</u>

Entries that were for matters exclusively related to Metrovision were eliminated, including communications with counsel for Metrovision and Freeman's response to Metrovision's motion to strike.

| | | | |
|---|---|---|---|
| 03/12/04 | WMB | .50 | .50 |
| 05/14/04 | WMB | .75 | .75 |
| 09/07/04 | WMB | .50 | .50 |
| 10/27/04 | WMB | .75 | .75 |
| 11/18/04 | WMB | .50 | .50 |
| 11/24/04 | WMB | .50 | .50 |
| 03/29/05 | WMB | 6.75 | 6.75 |
| 03/29/05 | WMB | 2.75 | 2.75 |
| 04/01/05 | WMB | 2.75 | 2.75 |
| | Total for WMB | | 15.75 |
| 03/28/05 | CED | .75 | .75 |
| 03/28/05 | CED | 1.50 | 1.50 |
| 03/28/05 | CED | 2.00 | 2.00 |
| 03/28/05 | CED | .50 | .50 |
| 03/29/05 | CED | 1.50 | 1.50 |

|          |       |      |      |      |
|----------|-------|------|------|------|
| 03/29/05 | CED   | 1.25 |      | 1.25 |
|          | Total for CED |      |      | 7.50 |
| 06/21/05 | ECP   | .30  |      | .30  |
|          | Total for ECP |      |      | .30  |

    f.    <u>Summary of adjustment to hours</u>.

A summary of the five categories described above is as follows:

|                   | WMB     | GSP  | ECP   | CED  | JP/AA/GB |
|-------------------|---------|------|-------|------|----------|
| Complaint         | 17.625  |      |       | 1.75 |          |
| Motions to dismiss| 50.25   |      |       |      | 1.80     |
| Discovery         | 50.00   | 9.35 |       | .25  | 6.70     |
| Summary judgment  | 56.50   |      | 12.80 |      |          |
| Other matters     | 15.75   |      | .30   | 7.50 |          |
| Total             | 190.125 | 9.35 | 13.10 | 9.50 | 8.50     |

The hours sought by Freeman will be reduced by these amounts to account for its lack of success in pursuing its claims against Metrovision and the other defendants dismissed from the action.

2.    <u>The responsibility incurred</u>.

In <u>DOTD v. Williamson</u>, <u>supra</u>, the Louisiana Supreme Court found there was much responsibility placed upon the attorneys because of the large amount of money ($1.4 million) involved. 597 So.2 at 442. The sum owed Freeman, $203,000, was not significant. New Orleans, however, contended that it was not liable for this sum. It argued that only Encuentro was liable. There was substantial responsibility on Freeman's counsel to establish the liability of New Orleans.

10

This weighs in favor of Freeman's request for attorneys' fees after removing the portion incurred in pursuit of the unsuccessful claims.

3.  The importance of the litigation.

The litigation had no particular importance beyond the litigants. There were no precedents established. Freeman's counsel did not undertake an unpopular cause.

4.  Amount of money involved.

The undersigned has already discussed the monetary value of Freeman's claim.

5.  Extent and character of the work performed.

New Orleans contends that some of the entries are excessive because of the "block billing methodology." It contends that Freeman's fee should be limited to no more than twenty-five percent of the amount recovered citing Hoskins v. Ziegler, 506 So.2d 146 (La. App. 1987), where the fee was limited to twenty-five percent of the amount collected. In Hoskins the defendant did not deny the existence of an agreement between the parties. Rather, the dispute was over its terms. The court was only required to hear testimony from the plaintiff and defendant. In this case, New Orleans denied it had any agreement with Freeman. Freeman prevailed on its arguments that: (1) Encuentro and New Orleans were a single business enterprise; (2) Encuentro was an agent with the apparent authority to bind New Orleans; and (3) Freeman relied to its detriment in its dealings with New Orleans. Rec. doc. 129. Even after it lost on the issue of liability, New Orleans contested the amount claimed by Freeman. Because of the issues raised by New Orleans, Freeman should not be restricted to a fee of twenty-five percent of the amount owed by New Orleans.

6.  Legal knowledge, attainment and skill of the attorneys.

Lead counsel for Freeman has more than thirty years of experience. The filings demonstrate that counsel for Freeman possessed the experience to handle the issues presented by the litigation.

7.  Number of appearances made.

The case required appearances by counsel at hearings on the motions and the trial on the issue of quantum.

8.  Intricacies of the facts involved.

The necessity of establishing the liability of New Orleans required discovery and the mastery of the facts concerning the arrangements for the meeting of the Inter-American Development Bank in New Orleans in 2000.

9.  Diligence and skill of counsel.

There is nothing in the record that demonstrates any lack of diligence in pursuit of Freeman's claims. The case was closed for nearly a year because of a pending federal criminal investigation and the refusal of witnesses to testify during the investigation. This delay cannot be attributed to Freeman's counsel. The skill of Freeman's counsel was discussed above.

10. The court's own knowledge.

But for the time spent in pursuit of the defendants that were dismissed, the undersigned's review of the billing record demonstrates that the hours incurred in litigating with New Orleans were reasonable.

## **THE HOURLY RATE**

New Orleans does not challenge the hourly rates for Freeman's counsel. Most of the time was incurred by lead counsel for Freeman. His rate was $225 per hour. The ten Louisiana factors were derived from the factors listed in Rule 1.5(a) of the Louisiana Rules of Professional Conduct. DOTD v. Williamson, 597 So.2d at 442. In Liljeberg Enterprises, Inc. v. Emmett, Cobb, Waits and Kessenich, 1996 WL 169128, *6 (E.D.La.), United States District Judge Sear said: "a court must examine all of the Rule 1.5(a) factors and their effect on setting a reasonable fee." One of the factors is the fee customarily charged in the locality for similar legal services. See Rule 1.5(a)(3).

Freeman initiated this litigation in July, 2002. Lead counsel kept his hourly rate of $225 unchanged throughout the litigation. In March, 2001, the undersigned determined that $200 was a reasonable hourly rate for lead counsel in a commercial dispute.[4] Based on that decision, the hourly rate sought by lead counsel for Freeman is reasonable.

The total amount sought by Freeman shall be reduced by the value of the hours eliminated above because they were incurred in pursuit of the claims against the defendants dismissed from the litigation.

| Time Keeper | Hours Reduced | Rate | Reduction in Value |
|---|---|---|---|
| WMB | 190.125 | 225 | 42,778.00 |
| GSP | 9.35 | 90 | 841.50 |
| ECP | 13.10 | 65 | 851.50 |

---

[4] "Base Metal Trading, Ltd. v. OJSC Novokuzketsky Aluminum Factory, et al," 00-2236-MLCF-SS, Rec. doc. 68 at pp 8-9.

|          |      |    |         |
|----------|------|----|---------|
| CED      | 9.50 | 50 | 475.00  |
| JP/AA/GB | 8.50 | 40 | 340.00  |
|          |      |    | ———     |
| Total reduction for unsuccessful claims | | | 45,286.00 |

Freeman's request for attorney's fees of $127,377.50 will be reduced by $45,286.00 to $82,091.50. This is a thirty-five percent reduction in the amount sought by Freeman.

## COSTS

Freeman seeks reimbursement of costs of $7,708.09. New Orleans does not raise a particular issue about the costs. The largest expenditure was for deposition transcripts. There also were significant copying costs. There is not sufficient detail to remove the costs related to the claims against Metrovision and the other defendants that were dismissed from the litigation. For example, the costs of the transcripts for Robert Gayle and Linda Prudhomme are not disclosed. In order to account for the costs incurred in Freeman's unsuccessful claims against Metrovision and the other defendants, its request for costs will be reduced in the same proportion (thirty-five percent) as its request for fees. The requests for costs will be reduced by $2,697.83 from $7,708.09 to $5,010.26.

## RECOMMENDATION

IT IS RECOMMENDED that Freeman be awarded attorneys' fees of $82,091.50 and costs of $5,010.26 for a total of $87,101.76.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal

the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. USAA, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 11th day of January, 2007.

                                        **SALLY SHUSHAN**
                                  **United States Magistrate Judge**